**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Johnny Powell, II<br>1332 Lewis Lane<br>Havre De Grace, MD 21078<br><br>      Plaintiff,<br><br>      v.<br><br>The Chestnut Firm, LLC<br>303 Peachtree Street<br>Suite 4150<br>Atlanta, GA 30308<br><br>And<br><br>Christopher M. Chestnut<br>303 Peachtree Street<br>Suite 4150<br>Atlanta, GA 30308<br><br>      Defendants | Case No:<br><br>Jury Demand |

## COMPLAINT

COMES NOW the Plaintiff, Johnny Powell II, by and through undersigned counsel, and respectfully presents this Complaint against The Chestnut Firm, LLC and Christopher M. Chestnut for Legal Malpractice.

## JURISDICTION AND VENUE

1. Jurisdiction is proper as the acts complained of occurred in Maryland. In deciding initially to represent Plaintiff Johnny Powell in regards to hazing incidents that occurred in Maryland, Defendants sent three different agreements to Maryland for Plaintiff to sign and Plaintiff signed all three and returned them to Defendants. Defendants transacted business and contracted to provide services to Plaintiff in

    Maryland. Indeed, it is because of Defendants' failure to associate with a Maryland lawyer or to familiarize themselves with the Maryland statutes and statutes of limitations for the causes of action regarding the facts that Plaintiff presented to the Defendants regarding the hazing that took place in Maryland, that we are before this court. Plaintiff's instant cause of action arose directly from those activities. Therefore, personal jurisdiction is proper under the Maryland long-arm statute.

2. Jurisdiction is proper as the amount in controversy exceeds $75,000 and there is complete diversity under 28 U.S.C. § 1332. Thus, this Court has jurisdiction of both the subject matter and venue.

3. Venue is properly laid as the acts herein complained of occurred in Maryland.

## STATEMENT OF FACTS

4. Plaintiff is a resident of the State of Maryland.

5. Defendant The Chestnut Firm, LLC is a Florida corporation with its headquarters in Atlanta, Georgia.

6. Defendant Christopher M. Chestnut is the named principal of The Chestnut Firm, LLC and is licensed to practice law in the State of Florida.

7. Defendant Christopher M. Chestnut is not licensed to practice law by the Georgia Bar even though The Chestnut Firm "headquarters" is in Georgia.

8. Defendant Christopher M. Chestnut is not licensed to practice law in the State of Maryland and neither are any of the lawyers who work for The Chestnut Firm.

9. Defendants advertise via internet in Maryland that one of their practice areas is "hazing injury" claims. In fact, Defendants' website states that Defendants' firm

"gained national renown in part due to Defendants handling of the Robert D. Champion wrongful death case. Defendants represented the family members of a Florida A&M drum major who tragically lost his life at the hands of fellow band mates during a brutal hazing ritual." Defendants' firm's website also states that their "attorneys handle hazing injury claims across the country, and Defendants can be anywhere in the United States within 24 hours."

10. Mr. Powell and his family chose to consult with Defendants' firm because of the advertisements on Defendants website. Initially, Mr. Powell's Aunt (retired federal law enforcement) spoke with Defendant Christopher M. Chestnut about Mr. Powell's case. The family inquired with Defendant Christopher M. Chestnut if he was licensed to practice law in Maryland as the hazing incidents occurred in Maryland. Defendant Christopher M. Chestnut did not disclose that he was not licensed to practice law in Maryland. Defendant Christopher M. Chestnut did not disclose that not one lawyer in The Chestnut Firm was licensed to practice law in Maryland. Instead, Defendant Christopher M. Chestnut stated that he files cases across the country and he would take care of everything.

11. Based on the words and assurances of Defendant Christopher M. Chestnut, the Plaintiff and his family chose Defendant Chestnut to represent Plaintiff in his hazing case involving Kappa Alpha Psi Fraternity, Inc. and Coppin State University.

12. Plaintiff contacted The Chestnut Firm not long after being discharged from the hospital where he had been admitted for 5 days due to injuries suffered as a result of hazing. His mother, Charlotte Powell, spoke with Defendant Christopher M.

3

Chestnut regarding Plaintiff's case. Mrs. Powell informed Defendant Christopher M. Chestnut that the family had received Defendants' contract for legal services and that they would be completing the contract and sending it back to Defendants. During this conversation, Mrs. Powell asked Defendant Christopher M. Chestnut if there was anything else he needed from the Powell family and he responded in the negative, stating that the contract was all that he required and also advising the family not to speak to anyone about the case. Defendant Christopher M. Chestnut further stated that Defendants were willing to take the case and do whatever was needed to obtain justice for Plaintiff. Defendants sent Plaintiff a contingency fee agreement which Plaintiff signed in March of 2013 and returned to Defendants.

13. Plaintiff's case was assigned to Kim Z. Kim Z acknowledged receipt of Plaintiff's executed contract. Kim Z took notes on Plaintiff's story and names of the persons involved. Plaintiff was told to email pictures of his injuries and all other information that Kim Z stated Defendants needed to proceed with his case. Kim Z further told Plaintiff that Defendants would call Plaintiff if they required any more information.

14. Mr. Powell informed The Chestnut Firm in great detail how the individuals below assaulted him and failed to report the hazing during the Spring Semester of 2013 when he was pledging Kappa Alpha Psi Fraternity, Inc. at Coppin State University and how no one from Coppin State University conducted an investigation when requested. Mr. Powell told The Chestnut Firm the following:

    a. **Dedric L. Rogers**, Province Meeting Planner, Eastern Region, Kappa Alpha Psi Fraternity, Inc.; Province Nominating Committee Chairman, Eastern Region, Kappa Alpha Psi Fraternity, Inc.; Past Polemarch - Baltimore Alumni Chapter, Baltimore Alumni Chapter Member.

Mr. Powell specifically stated the following in regards to Dedric L. Rogers:

*He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me at his house, in his basement in Fort Washington, Maryland. He personally* **forced me to drink alcohol and garlic powder.** *He personally forced me to stand in a bucket of ice water while members of Kappa Alpha Psi Fraternity poured salt in it. He had knowledge of the hazing had a duty to report it and failed to report it.*

He and other members of Kappa Alpha Psi Fraternity had me do cycles of punishments for several minutes at a time for messing up. There were literally stations of torture: One station was the paddle; One station was the cane; One station was back/shoulder slaps; One station was pushups on canes, chest slaps, physical exercise, and then back up to recite information again and if I messed up he had to do it all over again.

The hazing acts took place from 9pm – 2am in the Spring Semester of 2013 (February 2013 – March 2013) in Fort Washington, Maryland.

b. **Jose L. Baez**, Undergraduate Board Member, Region I, Eastern Region of Kappa Alpha Psi Fraternity, Inc.; Past Polemarch - Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University.

Mr. Powell specifically stated the following in regards to Jose L. Baez:

*He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me every night during the Spring Semester of 2013. While at a set at alumni member Alphonzo Green's House, Jose L. Baez had me to recite information while he, the Polemarch of Zeta Gamma Chapter, was twisting a cork bottle opener into my hand causing severe pain. He had knowledge of the hazing had a duty to report it and failed to report it.*

The hazing acts took place every night from 9pm – 2am (sometimes to 4am) in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland, Owings Mills, Maryland; and Fort Washington, Maryland.

c. **Immanuel Howell-Bey**, Baltimore Alumni Chapter member, Chapter Advisor to Theta Chi Chapter of Kappa Alpha Psi Fraternity, Inc. at the University of Maryland, Baltimore County.

5

Mr. Powell specifically stated the following in regards to Immanuel Howell-Bey:

***He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me at his house in Baltimore, Maryland. He had knowledge of the hazing had a duty to report it and failed to report it.***

The hazing acts took place from 9pm – 2am in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland.

d. **Orlando Bloom**, pledged Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University in 05 or 06. Mr. Bloom's alumni chapter is not known.

Mr. Powell specifically stated the following in regards to Orlando Bloom:

***He personally participated in and encouraged other members to haze (punched, hit, slapped, caned and paddled) me in Dedric L. Rogers basement. He had knowledge of the hazing had a duty to report it and failed to report it.***

He and other members of Kappa Alpha Psi Fraternity had me do cycles of punishments for several minutes at a time for messing up. There were literally stations of torture: One station was the paddle; One station was the cane; One station was back/shoulder slaps; One station was pushups on canes, chest slaps, physical exercise, and then back up to recite information again and if I messed up he had to do it all over again.

The hazing acts took place from 9pm – 2am in the Spring Semester of 2013 (February 2013 – March 2013) in Fort Washington, Maryland.

e. **Alphonzo Green**, Baltimore Alumni Chapter member, Kappa Alpha Psi Fraternity, Inc.

Mr. Powell specifically stated the following in regards to Alphonzo Green:

***He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me at his house in Owings Mills, Maryland. He forced me to eat made up concoctions of bananas garlic hot sauce, onion and other unknown ingredients that***

6

*tasted horrible. He had knowledge of the hazing had a duty to report it and failed to report it.*

The hazing acts took place from 9pm – 2am in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland.

f. **Tyree Williams** became a member of the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University in the Spring 2000 (thirteen (13) years before Plaintiff) and was not enrolled at the college when he served as Kappa Alpha Psi Fraternity, Inc.'s and The Baltimore Alumni Chapter of Kappa Alpha Psi Fraternity, Inc.'s Membership Intake Officer/Dean, for the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University during the Spring 2013 Membership Intake Process.

Mr. Powell specifically stated the following in regards to Tyree Williams:

*He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me every night during the Spring 2013 Membership Intake Process. He had knowledge of the hazing had a duty to report it and failed to report it.*

The hazing acts took place every night from 9pm – 2am (sometimes to 4am) in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland, Owings Mills, Maryland; and Fort Washington, Maryland.

g. **Mark Briggs** was the Membership Intake Officer/Asst. Dean, for the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University when he served as when he served as Kappa Alpha Psi Fraternity, Inc.'s and The Baltimore Alumni Chapter of Kappa Alpha Psi Fraternity, Inc.'s Membership Intake Officer/Asst. Dean during the Spring 2013 Membership Intake Process.

Mr. Powell specifically stated the following in regards to Mark Briggs:

*He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me every night during the Spring 2013 Membership Intake Process. He had knowledge of the hazing had a duty to report it and failed to report it.*

The hazing acts took place every night from 9pm – 2am (sometimes to 4am) in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland, Owings Mills, Maryland; and Fort Washington, Maryland.

h. **Jamell Mason** was a member of the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University during the Spring 2013 Membership Intake Process.

Mr. Powell specifically stated the following in regards to Jamell Mason:

*He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me every night during the Spring 2013 Membership Intake Process. He had knowledge of the hazing had a duty to report it and failed to report it.*

The hazing acts took place every night from 9pm – 2am (sometimes to 4am) in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland, Owings Mills, Maryland; and Fort Washington, Maryland.

i. **Kennan Reynolds,** was a member of the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University during the Spring 2013 Membership Intake Process.

Mr. Powell specifically stated the following in regards to Kennan Reynolds:

*He personally participated in and encouraged other members to haze (punch, hit, slap, caned and paddle) me every night during the Spring 2013 Membership Intake Process. He had knowledge of the hazing had a duty to report it and failed to report it.*

The hazing acts took place every night from 9pm – 2am (sometimes to 4am) in the Spring Semester of 2013 (February 2013 – March 2013) in Baltimore, Maryland, Owings Mills, Maryland; and Fort Washington, Maryland.

j. **Kenneth Pough**, Baltimore Alumni Chapter member, Chapter Advisor to Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University; Deputy - Advisors Committee, Eastern Region, Kappa Alpha Psi Fraternity, Inc.

Mr. Powell specifically stated the following in regards to Kenneth Pough:

*He had knowledge of the hazing going on at Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University during the Spring Semester of 2013 and as Chapter Advisor to Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State*

> *University; Deputy - Advisors Committee, Eastern Region, Kappa Alpha Psi Fraternity, Inc., he had a duty to report it and failed to report it.*

15. The injuries that the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University and other members of Kappa Alpha Psi Fraternity inflicted on the buttocks, back and legs of Mr. Powell required Mr. Powell to sleep on his side or on his stomach every night. Mr. Powell went to sleep every night in pain from the beatings. After seeing blood in his urine one evening, he was frightened enough to go to the hospital where he informed the doctors of what had occurred.  The doctors were in disbelief at some of the levels that Mr. Powell had as they were extremely high.  They informed Mr. Powell that any additional blows of that nature might have killed him.  Mr. Powell spent five (5) days at Franklin Square Hospital before being released.

16. While Mr. Powell was in the hospital, his aunt contacted the campus security force at Coppin State University and informed them of what had occurred. However, they blew her off and never came to interview Mr. Powell. After returning to school at Stevenson University, Mr. Powell informed Stevenson University officials (Jeff Kelly, Dean of Students and Kyle Turman, Assistant Director of Student Activities and club advisor) of what had occurred.  These officials contacted Coppin State University via email and requested an investigation but no investigation was conducted by Coppin State University.

17. Within a day or two after Mr. Powell and his family informed Stevenson University officials of what had occurred, Kenneth Pough, the Baltimore Alumni Chapter member who was officially appointed by the Baltimore Alumni Chapter

of Kappa Alpha Psi Fraternity, Inc. as Chapter Advisor for the Zeta Gamma Chapter of Kappa Alpha Psi Fraternity, Inc. at Coppin State University, contacted Mr. Powell to apologize for what had happened to him.  Mr. Powell told Mr. Pough that he was done and would not subject himself to anymore of what had occurred.

18. No one from Kappa Alpha Psi Fraternity, Inc. or Coppin State University ever interviewed Mr. Powell about what had occurred and no investigation was conducted even though both entities were informed of what was going on by Mr. Powell's family and Stevenson University officials.

19. Mr. Powell was given his membership into Kappa Alpha Psi Fraternity, Inc.  However, after he finished the process he was ostracized by the chapter and bullied and threatened with bodily harm if he made a criminal complaint against those who had punched or slapped him in the chest, caned or paddled him.

20. Mr. Powell states that months passed in which he called and left messages for someone from Defendants' firm to call him back but his calls were never returned.  Mr. Powell continued to call and when he finally got in contact with someone, he was told that Defendants' firm was still conducting background checks on the persons he had named and would give him a call if they required additional information.

21. After approximately 6 months, Mr. Powell and his mother called The Chestnut Firm to find out that another attorney by the name of Holly Williamson had been assigned to Mr. Powell's case.  Ms. Williamson assured Mr. Powell and his mother that all paperwork had been signed and delivered safely and that they had

taken care of everything that needed to be taken care of and that the firm would begin working on the case as soon as possible.

22. More time passed and the next time Mrs. Powell called The Chestnut Firm, she again spoke with Ms. Williamson who assured her that the firm was working on the case and only needed Plaintiff's medical billing information.  Mrs. Powell informed Ms. Williamson that Mr. Powell had submitted all medical billing documentation to The Chestnut Firm but would send it again.  Mr. Powell then resent Ms. Williamson a copy of his medical records by mail and also by email.

23. Subsequently, Mr. Powell called The Chestnut Firm on several occasions.  As before, he left numerous messages with an attorney who was not returning his calls or explaining to him what was going on with his case.  After months passed, Mr. Powell and his mother called The Chestnut Firm to find out that Plaintiff's case had been assigned to a paralegal by the name of Candice Elliot.  Mrs. Powell spoke with Ms. Elliot about obtaining justice for Plaintiff and Ms. Elliot assured Mrs. Powell that she would be speaking with Defendant Christopher M. Chestnut to personally discuss how Defendant Christopher M. Chestnut planned to proceed with Mr. Powell's case.

24. Mr. Powell spoke with Ms. Elliot several times and she stated that the firm was requesting his medical records and bills once more.  For the third time, Mr. Powell sent her a copy of his medical records by mail and by email.  As before, Mr. Powell was stuck with a paralegal for whom he was leaving messages but who was not returning his calls or explaining to him what was going on with his case.

25. In mid-January 2015 (almost two years after he retained The Chestnut Firm), Mr. Powell called to terminate his contract with Defendants because no lawsuit had been filed. He connected with attorney Jamie Agney. Mr. Powell asked attorney Agney for a copy of the Tort Claim that Defendants' office filed with the Maryland Treasurer. In response, Ms. Agney stated that she had never heard of that term.

26. Mr. Powell followed up a few days later with an email requesting a copy of his contract and any additional information from his file that could be provided. Attorney Agney emailed him Defendants' contingency fee agreement signed by Mr. Powell in March 2013; Defendant's statement of client's rights signed by Mr. Powell; and Defendant's Client Authorization (for release of information) signed by Mr. Powell in March 2013 which authorized schools to release Plaintiff's records to Defendant Christopher M. Chestnut.

27. At no time did the Defendants ever inform Plaintiff that they had failed to comply with the Maryland Tort Claims Act.

28. At no time did the Defendants ever inform Plaintiff that because Defendants had failed to comply with the Maryland Tort Claims Act, Mr. Powell's claims against the State of Maryland, Coppin State University, for negligence and negligent supervision and training are barred and forever lost.

29. At no time did the Defendants ever inform Plaintiff that they had missed the statute of limitations for filing an assault claim in Maryland.

30. At no time did Defendants ever inform Plaintiff that because Defendants missed

the one year statute of limitations for filing an assault claim, Plaintiff is forever barred from bringing assault claims against those who hazed him.

### Count I: Legal Malpractice (All Defendants)

31. Plaintiff re-pleads and re-alleges paragraphs 1 through 30 as if set forth separately and at length herein.

<u>Assault</u>

32. This case arises from the missed one-year statute of limitations provision applicable to actions for "assault." In Maryland, the statute of limitations applicable to actions for "assault, libel, or slander" is one year. Md. Code, Courts and Judicial Proceedings (CJ), § 5–105. (2014 Supp.) Mr. Powell signed Defendants' contingency fee agreement in March 2013 for representation on his hazing (assault) claims that occurred in January 2013 and February 2013.

33. In March 2013, Mr. Powell informed Defendants in great detail how the above-named individuals assaulted him and failed to report the hazing during the Spring Semester of 2013 when he was pledging Kappa Alpha Psi Fraternity, Inc. at Coppin State University.

34. As of mid-January 2015, almost one year *after* the one-year statute of limitations for assault had passed, Defendants had not filed a lawsuit or informed the Plaintiff that they had failed to file his assault claim before the one-year statute of limitations had passed.

35. Defendants had a duty to know or become familiar with the statute of limitations on claims under Maryland law, as the hazing events occurred in the state of Maryland. As a result of Defendants' failure to file his assault claim within the

13

one-year statute of limitations, Mr. Powell has been permanently harmed by Defendants because he is forever barred from bringing assault claims (including punitive damages) against those who hazed him.

36. Plaintiff's loss of his rights to sue those who hazed him for assault was proximately caused by Defendants' neglect of duty.

## Maryland Tort Claims Act

37. This case also arises under the one-year notice provision of the Maryland Tort Claims Act, Section 12-106 (b)(1) of the State Government Article, Maryland Code (2014). Section 12-106 (b)(1) of the State Government Article, Maryland Code states:

> (b) *Claim and denial required.* – A claimant may not institute an action under this subtitle unless:
> (1) the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis for the claim . . .

38. Defendants expressly failed to meet the notice requirements of the Maryland Tort Claims Act (MTCA). See also Sawyer v. Humphries, 322 Md. at 257-58, 587 A.2d at 471-72 (plaintiff failed to give any notice to the State under the MTCA, which precluded suit against both the State and the State Police). In order to sue the State or one of its agencies (Coppin State University), a Plaintiff such as Mr. Powell must first comply with the notice requirements of the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't § 12–101, et seq., which provides a limited waiver of State sovereign immunity. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993).

39. Specifically, a claimant must provide written notice to the State Treasurer or its designees within one year of the alleged injury. Gray v. Maryland, 228 F. Supp.

2d 628, 640-41 (D. Md. 2002). The MTCA's notice requirements are strictly enforced and courts may not "entertain claims by claimants who fail to exhaust their administrative remedies before the Treasurer." Chinwuba v. Larsen, 142 Md. App. 327, 354, 790 A.2d 83 (2002).

40. These prerequisites are designed to "afford the State the opportunity to investigate the claims while the facts are fresh and memories vivid, and, where appropriate, settle them at the earliest possible time." Haupt v. State, 340 Md. 462, 470, 667 A.2d 179 (1995).

41. Defendants failed to timely comply with the MTCA's notice requirements because Defendants never served notice of the lawsuit on the State Treasurer or any of its designees of Mr. Powell's claims. It is undisputed that Defendants never filed a notice with the Maryland State Treasurer on behalf of Mr. Powell. In fact, Ms. Agnew from Defendants' Atlanta office has conceded that Defendants did not effect service upon the State Treasurer on behalf of Mr. Powell.

42. There is a "longstanding principle under Maryland law that the failure to meet a condition precedent extinguishes the right itself [to bring a claim]." Ferguson v. Loder, 186 Md. App. 707, 727, 975 A.2d 284 (2009); see also Barbre v. Pope, 402 Md. 157, 177 n.16, 935 A.2d 699 (2007) ("The MTCA notice provision . . . is a condition precedent to the initiation of an action under the MTCA which must be met, as opposed to a statute of limitations for which relation back may apply") (internal quotation marks and citation omitted). Therefore, Mr. Powell's claims against the State of Maryland, Coppin State University, for negligence and

negligent supervision and training are barred and forever lost because Defendants failed to provide written notice to the State Treasurer or its designees within one year of Mr. Powell's injuries. The court may not "entertain claims by claimants who fail to exhaust their administrative remedies before the Treasurer." Chinwuba v. Larsen, 142 Md. App. 327, 790 A.2d 83, 98 (Md. Ct. Spec. App. 2002), rev'd on other grounds, 377 Md. 92, 832 A.2d 193 (Md. 2003).

43. Defendants had a duty to know or become familiar with the statute of limitations on claims under Maryland law, as the hazing events happened in the state of Maryland.

44. Defendants had a duty to file the Maryland Tort Claim Act Letter with the Maryland Treasurer's Office within the one-year statute of limitations.

45. Defendants breached that reasonable duty when they failed to file Plaintiff's Maryland Tort Claim Act Letter within the one-year statute of limitations.

46. As a result of Defendants' failure to file Plaintiff's Maryland Tort Claim Act Letter within the one-year statute of limitations, Mr. Powell has been permanently harmed because he is forever barred from filing a lawsuit against the State of Maryland, Coppin State University, for negligence and negligent supervision and training.

47. Defendants breached their duty of care to act as reasonably competent attorneys. The duty owed by an attorney to his or her client is to exercise ordinary care and diligence in the execution of business entrusted to him or her and to provide a fair and average degree of professional skill and knowledge.

48. Plaintiff's loss of his rights to sue the State of Maryland, Coppin State University was proximately caused by Defendants' neglect of duty.

## **RELIEF**

49. Plaintiff seeks the following relief as set forth below.

50. Compensatory damages against the Defendants in the amount of $2,200,000.

51. Expert witness fees.

52. Attorney's fees and costs, and interest.

53. Such other relief as he may be entitled.

## **JURY DEMAND**

54. Plaintiff demands a trial by jury.

Respectfully submitted,

_____/s/_____
Jimmy A. Bell, Esq.
Law Office of Jimmy Bell, L.L.C.
P.O. Box 2239
Upper Marlboro, Maryland 20773
(301) 661-1165
(301) 560- 5267(Fax)
jimbellesq@aol.com
*Counsel for Plaintiff*